IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES A. DOWELL, | ) | CASE NO. 1:06CV1771 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE NUGENT |
| v. | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| STUART HUDSON, WARDEN, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the court is James A. Dowell's ("Dowell") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on July 21, 2006.  Dowell is in the custody of the Ohio Department of Corrections pursuant to his guilty plea in *State of Ohio v. Dowell*, Case no. CR 435225 (Cuyahoga County 2003).  For the reasons set forth below, the magistrate judge recommends that the petition be dismissed.

I

The January 2003 term of the Cuyahoga County grand jury indicted Dowell on one count of murder with a firearm specification and one count of having a weapon while under a disability.  The state appellate court reviewing Dowell's conviction and sentence found the following facts to be relevant to his appeal:

On the morning of March 6, 2003, Chester Bright was fatally shot once in the chest by the defendant.

Prior to the shooting, defendant and Chester knew each other from working odd jobs at local bars.  Both defendant and Chester were characterized as "mentally disabled."

In the early morning hours of March 6, 2003, Chester came to the defendant's house to help him with some house and yard work.  Defendant was a coin collector and noticed that some of his coins were missing. Defendant questioned Chester about the missing coins and a fight ensued.  Defendant reached for a gun and shot Chester once in the chest.  Defendant then put the gun in the basement. Approximately 50 minutes after the shooting, defendant made a 911 telephone call to the Cleveland Police Department.

On March 20, 2003, defendant was indicted on two charges:  One count of murder, in violation of R.C. 2903.02 with a firearm specification and one count of having a weapon while under disability, in violation of R.C. 2923.13.  Defendant entered a plea of not guilty at his arraignment and his case proceeded to a jury/bench trial.

At trial, the State alleged that defendant purposely caused the death of Chester after getting into an argument with him about the missing coins.  Defendant asserted that he was fighting with Chester and did not intend to kill him.

The State first presented the testimony of John Gigante, a dispatcher with the Cleveland Police Department.  He testified that he received a 911 call from the defendant at approximately 8:57 a.m. on the morning of March 6, 2003.

The State then called Officer Robert Miles of the Cleveland Police Department.  He testified that he responded to the 911 call made by defendant and emergency personnel attempting to revive Chester.  He testified that he saw a large number of coins surrounding Chester's body.  He testified that the defendant told him that he had gotten into a fight with Chester over money.  He testified that the defendant did not tell him that Chester had been shot until after Chester had been transported to the hospital.  He testified that defendant admitted, after repeated questioning, that the gun used to shoot Chester was in the basement.  Finally, Officer Miles testified that once he obtained the weapon from the basement, defendant stated that he and Chester were struggling with the gun when they both fell over and the gun went off.

Richard Gregg was a friend of both the defendant and Chester.  He testified that Chester lived at his workshop and had a collection of coins.

Anne Medley, Chester's sister, testified that Chester collected coins and often kept them on his person.

2

Renee Brain, a bartender at Lido Lounge where the defendant and Chester frequented, testified that the night before the shooting, the defendant was looking for Chester to help him with some work around his house.  She also testified that Chester collected coins.

Deputy County Coroner Erica Armstrong testified that Chester Bright died of a close-range gun shot wound to the left chest area.  She testified that Chester had numerous injuries to his face, neck, and scalp as well.  Finally, she testified that Chester was legally intoxicated at the time of the shooting.

Timothy Nock of the Coroner's Office Trace Evidence Department testified that he did not have any evidence that Chester ever held the gun that killed him.  He also testified that the gunshot residue on Chester's clothing matched the residue of the defendant's gun.

Detective Melvin Smith of the Cleveland Police Department testified that he was the head investigating officer assigned to the case.  He testified that there were numerous coins surrounding Chester's body and that Chester only had 25 cents on his person.

Detective Nathan Wilson of the Cleveland Police Department testified that the bullet retrieved from Chester's body came from the defendant's gun.

For the defense, defendant presented two witnesses, Manuel Corchado and Constance Perez, who testified that defendant had a coin collection. In addition, defendant testified on his own behalf. Defendant concedes that he got into an argument with the victim and that they were rolling around on the floor.  Defendant claims, however, that Chester was drunk and attacked him.  Defendant claims that a struggle ensued and Chester found a gun that was concealed under the cushion of the couch.  Defendant testified that both parties struggled with the gun and it just went off.  Defendant states that he was in shock and put the gun in the basement so that nothing else would occur.  Defendant testified that he called 911.

On September 5, 2003, the jury returned a verdict of guilty to the indicted charge of murder, in violation of R.C. 2903.02, with a three-year firearm specification. Defendant was also found guilty by the trial court of having a weapon while under disability, in violation of R.C. 2923.13.

*State v. Dowell*, 2004 WL 1631129, at *1-*2 (Ohio App. July 22, 2004) (footnote omitted).

The court sentenced Dowell to 15 years to life imprisonment for murder to be served

consecutively to a mandatory three years' imprisonment for the firearm specification.  The

court also sentenced Dowell to a nine month term of imprisonment for having a weapon

3

while under a disability, that sentence to be served concurrently with the sentence for murder.

Dowell timely filed a notice of appeal in the state appellate court.  Dowell asserted three assignments of error in his appeal:

Assignment of Error No. 1:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL AS TO THE CHARGE OF MURDER WHEN THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE THAT APPELLANT ACTED PURPOSELY.

Assignment of Error No. 2:
APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

Assignment of Error No. 3:
THE TRIAL COURT COMMITTED PLAIN ERROR IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION WHEN IMPROPERLY INSTRUCTING THE JURY ON VOLUNTARY MANSLAUGHTER ON THE KNOWINGLY ELEMENT.

The state appellate court affirmed the judgment of the trial court on August 2, 2004.

Dowell did not file a timely notice of appeal in the Ohio Supreme Court.  On December 1, 2004, however, the Ohio Supreme Court allowed Dowell to file a delayed appeal.  In his memorandum in support of jurisdiction, Dowell raised the following propositions of law:

Proposition of Law No. I:  The trial court erred in denying appellant's motion for acquittal as to the charge of murder when the state failed to present sufficient evidence that appellant acted purposely.

Proposition of Law No. II:  Appellant's conviction of [sic] murder is against the manifest weight of the evidence.

Proposition of Law No. III:  The trial court committed plain error in violation of the Fourteenth Amendment of the United States Constitution and Article I, Section 10

4

of the Ohio Constitution when improperly instructing the jury on voluntary manslaughter on the knowingly element.

On March 2, 2005 the Ohio Supreme Court dismissed Dowell's appeal as not involving any substantial constitutional question.

On October 21, 2004 Dowell filed in the state appellate court a motion to reopen his direct appeal pursuant to Ohio App. R. 26(B).  Dowell alleged that his appellate counsel had been ineffective for failing to argue the ineffectiveness of trial counsel in the following respects:

> 1-2.  Counsel failed to familiarize himself with facts of law relevant to a case of this magnitude and failed to adequately prepare for trial.

> 3.  Trial counsel failed to procure witnesses to rebut state's expert witnesses.

> 4.  Counsel failed to prepare appellant for testimony.

> 5.  Counsel failed to investigate the crime scene.

> 6.  Counsel failed to investigate and use material witnesses available to him.

(Capitalization altered from the original.)  On April 27, 2005 the state appellate court denied Dowell's motion to reopen his appeal.  The court found that the issues raised in Dowell's motion were barred by *res judicata*, as they could have been raised in a timely direct appeal or in Dowell's delayed appeal to the Ohio Supreme Court.  The court also found that Dowell's claim of ineffective assistance of appellate counsel was without merit, finding that had Dowell's appellate counsel raised the deficiencies in trial counsel's performance alleged by Dowell it would not have altered the outcome of Dowell's trial.  Finally, the court found that Dowell's motion argued the issues of manifest weight and sufficiency of the evidence against him and that these issues were *res judicata*, as they had been raised in Dowell's direct appeal.

5

Dowell timely appealed the decision of the state appellate court to the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Dowell asserted the following propositions of law:

Proposition of Law No. I:  The Court of Appeals erred when it dismissed the application on grounds that the allegations contained therein were barred by the doctrine of res judicata.

Proposition of Law No. II:  Appellate counsel violated disciplinary rules prohibiting an attorney from accepting or continuing employment where the interests of another client impairs his independent professional judgment.

On August 10, 2005 the Ohio Supreme Court dismissed Dowell's appeal as not involving any substantial constitutional question.

On April 13, 2004 Dowell filed in the trial court a petition for postconviction relief pursuant to Ohio Rev. Code § 2953.21.  In his petition, Dowell raised four claims of ineffective assistance of trial counsel for failing properly to cross-examine witnesses; one for failing properly to investigate the case, consult with Dowell, and interview the state's witnesses; one for failing to file a motion to suppress Dowell's statements; and one for failing to file a motion to dismiss based on a violation of Dowell's right to a speedy trial.  On February 24, 2005 Dowell filed in the state appellate court a motion for a writ of mandamus to compel the trial court to rule on his petition for post-conviction relief.  On March 23, 2005 the trial court dismissed Dowell's petition.  The court found that the first three claims of ineffective assistance of counsel were barred by *res judicata* and that the fourth claim was without merit as Dowell had signed a waiver of his right to a speedy trial.  The court also found that all four claims were without merit because counsel's performance did not violate any duty owed Dowell and because Dowell was not prejudiced by any alleged deficiency in counsel's performance.  Finally, the court found that the claims raised by Dowell were

6

insufficient to merit a hearing.

Dowell timely appealed the trial court's dismissal of his petition for postconviction

relief.  In his appeal to the state appellate court Dowell asserted four assignments of error:

ASSIGNMENT OF ERROR NO. I:

THE TRIAL COURT ERRED WHEN IT DISMISSED THE PETITION FOR POST-CONVICTION RELIEF ON GROUNDS THE THE [sic] ALLEGATIONS CONTAINED THEREIN WERE BARRED BY THE DOCTRINE OF RES JUDICATA.

ASSIGNMENT OF ERROR NO. II:

THE TRIAL COURT ERRED WHEN IT DISMISSED THE PETITION AS INSUFFICIENT.

ASSIGNMENT OF ERROR NO. III AND IIII[sic]:

THE TRIAL COURT ERROR [sic] WHEN IT DISMISSED THE PETITION ON EFFECTIVE ASSISTANCE OF COUNSEL.

On February 7, 2006 the state appellate court affirmed the judgment of the trial court.

Dowell timely appealed the state appellate court's decision to the Ohio Supreme

Court.  In his memorandum in support of jurisdiction, Dowell asserted two propositions of

law:

Proposition of Law No. I:

THE COURT OF APPEALS ERRED WHEN IT DISMISSED THE PETITION FOR POST-CONVICTION RELIEF ON GROUNDS THAT THE ALLEGATIONS CONTAINED THEREIN WERE BARRED BY THE DOCTRINE OF RES JUDICATA.

Proposition of Law No. II:

THE COURT OF APPEALS ERRED WHEN THEY REJECTED APPELLANT'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL WHEN IT WAS SUPPORTED BY SUFFICIENT EVIDENCE.

On May 10, 2006 the Ohio Supreme Court dismissed Dowell's appeal as not involving any

substantial constitutional question.

Dowell filed a petition for a federal writ of habeas corpus in this court on July 21,

2006.  In his amended petition Dowell asserts twelve grounds for relief:

Ground 1:     PETITIONER'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS
              TO THE CONSTITUTION TO EQUAL PROTECTION AND DUE
              PROCESS WERE VIOLATED WHEN THE TRIAL COURT IN
              DENYING PETITIONER'S MOTION FOR ACQUITTAL AS TO THE
              CHARGE OF MURDER WHEN [sic] THE STATE FAILED TO
              PRESENT [sic] SUFFICIENT EVIDENCE THAT PETITIONER ACTED
              PURPOSELY.

Ground 2:     PETITIONER'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS
              TO THE CONSTITUTION OF EQUAL PROTECTION AND DUE
              PROCESS WERE VIOLATED AN[D] HIS CONVICTION OF MURDER
              IS AGAINST THE SUFFIENCY OF THE EVIDENCE (ACTUAL
              INNOCEN[CE]).

Ground 3:     THE TRIAL COURT COMMITTED PLAIN ERROR IN VIOLATION OF
              THE FOURTEENTH AMENDMENT OF THE UNITED STATES
              CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO
              CONSTITUTION WHEN IMPROPERLY INSTRUCTING THE JURY
              ON VOLUNTARY MANSLAUGHTER ON THE KNOWINGLY
              ELEMENT.

Ground 4:     PETITIONER WAS DENIED HIS FOURTEENTH AND FIFTEENTH
              AMENDMENT RIGHTS TO THE UNITED STATES CONSTITUTION
              WHEN THE STATE COURTS FAILED TO RULE ON THE MERITS
              OF HIS CLAIMS.

Ground 5:     Petitioner's alleges [sic] his right to due process under the Fourteenth
              Amendment under [sic] the United States Constitution an entitlement
              to invoke the factual similarity requirement where "NEW" facts were
              discovered and were not easily discoverable in petitioner's pro se
              capacity:  Petitioner alleges that both his trial counsel and appellate
              counsel's ineffectiveness, [sic] in all related matters, Petitioner also
              alleges insufficiency of the evidence, improper jury instructions on
              voluntary manslaughter on the knowingly element. . . .

Ground 6:     PETITIONER'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT
              RIGHTS WERE VIOLATED DUE TO THE INEFFECTIVENESS OF
              HIS TRIAL COUNSEL.

Ground 7:     PETITIONER ASSERTS AN ENTITLEMENT TO AN EVIDENTIARY
              HEARING ON HIS CLAIMS OF INEFFECTIVE ASSISTANCE OF

8

COUNSEL WHERE COUNSEL NOT ONLY PREJUDICE[D] HIS RIGHTS AND TRIAL BUT ALSO DENIED HIS CLIENT'S FIFTH, SIXTH AND FOURTEENTH AMENDMENT PRIOR [sic] TO TRIAL, DURING TRIAL, AND EVEN AFTER HIS TRIAL.

Ground 8:  PETITIONER ALLEGES HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN THE FOLLOWING MANNER AND THAT COUNSEL'S ACTS OR OMISSIONS SUFFICIENTLY FALLS [sic] OUTSIDE THE WIDE RANGE OF PROFESSIONALLY COMPETENT ASSISTANCE, WHICH SUBSEQUENTLY DENIED PETITIONER OF [sic] HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS UNDER ARE [sic] UNITED STATES' CONSTITUTIONAL LAW.

Ground 9:  PETITIONER ALLEGES HE WAS DENIED HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENT OF [sic] EQUAL PROTECTION AND EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL, AND DUE PROCESS OF LAW UNDER THIS UNITED STATES CONSTITUTION.

Ground 10:  PETITIONER WAS DENIED FOURTEENTH AMENDMENT RIGHTS UNDER DUE PROCESS OF LAW.

Ground 11:  PETITIONER'S RIGHTS WERE VIOLATED BY THE PROSECUTION WHEN PROSECUTION WITH SEVERAL CRUCIAL PIECES OF EXCULPATORY EVIDENCE DENING [sic] PETITIONER OF HIS [sic] FIFTH AND FOURTEENTH TO THIS [sic] UNITED STATES CONSTITUTION DENING [sic] HIM OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW.

Ground 12:  PETITIONER WAS DENIED HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED [sic] AND HE IS IN CUSTODY IN VIOLATION OF THESE CONSTITUTIONAL LAWS OF THE UNITED STATES.

(Spelling and punctuation altered from the original; capitalization in the original.)

Respondent filed an Answer/Return of Writ on November 6, 2006 (Docket #14).  Dowell

filed a Traverse on January 25, 2007 (Docket #20).  Thus, the petition is ready for decision.

II

A.  *Jurisdiction*

Dowell is in the custody of Mansfield Correctional Institution in Mansfield, Ohio and was sentenced by the Court of Common Pleas of Cuyahoga County, Ohio.  Dowell filed his petition in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254:

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a state court of a state which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the state court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a)&(d).  This court has personal jurisdiction over Dowell.

Respondent argues that the court does not have subject matter jurisdiction over Dowell's tenth ground for relief because Dowell seeks relief based on an alleged error during a collateral proceeding.  Habeas claims that challenge constitutional errors committed in collateral, state post-conviction proceedings do not directly challenge the judgment pursuant to which the petitioner is in custody and are non-cognizable in federal habeas proceedings.  *Kirby v. Dutton*, 794 F.2d 245, 247-48 (6th Cir. 1986).

Dowell's tenth claim for relief contends that the denial of his petition for postconviction relief was "unreasonable" and that this was a violation of due process.  Such a claim addresses alleged constitutional violations in collateral, post-conviction proceedings and are beyond this court's subject matter jurisdiction.  For this reason the magistrate judge recommends that the court dismiss Dowell's tenth ground for relief as outside the court's

10

jurisdiction.

B.    *Evidentiary Hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings or when the state proceedings were seriously defective or inadequately recorded.  *See* 28 U.S.C. § 2254(d).  There is no need for an evidentiary hearing in the instant case.  All Dowell's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of State Remedies*

A state prisoner must have no remaining state remedies prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castille v. Peoples,* 489 U.S. 346, 349 (1989); *Riggins v. Macklin,* 936 F.2d 790, 793 (6th Cir. 1991).  The prisoner must fairly present any claims to the state in a constitutional context.  *Anderson v. Harless,* 489 U.S. 4 (1982); *Picard v. Connor,* 404 U.S. 270 (1971); *Shoultes v. Laidlaw,* 886 F.2d 114, 117 (6th Cir. 1989).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all of the petitioner's claims.  *Manning v. Alexander,* 912 F.2d 878, 881-83 (6th Cir. 1990).

Dowell has no remaining state remedies.  His claims are, therefore, exhausted.

D.    *Procedural default*

Respondent argues that Dowell has procedurally defaulted his third, sixth, eighth, ninth, and eleventh grounds for relief.  Procedural default occurs when a petitioner fails to present fairly his constitutional claims to the highest state court in a federal constitutional

11

context. *Anderson,* 489 U.S. 4; *Picard,* 404 U.S. 270.  Reasons of federalism and comity generally bar federal habeas corpus review of  "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

If the state argues that a petitioner has procedurally defaulted, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman,* 501 U.S. at 750.

Dowell's third ground for relief contends that the trial court erred in violation of the

12

Fourteenth Amendment when it improperly instructed the jury as to the *mens rea* of "knowingly" for the count of voluntary manslaughter.  Dowell procedurally defaulted this claim by failing to object to the instruction at trial.  The appeals court noted the default but also reviewed the merits of the claim under a plain error analysis.  When a state court disposes of a claim on the grounds of procedural default but also examines the merits of the claim, the default is a substantial basis for the decision, and federal review of the merits of the claim is barred.  *Ewing v. McMackin*, 799 F.2d 1143, 1149 (6th Cir. 1986); *see also McBee v. Grant,* 763 F.2d 811, 813 (6th Cir.1985).  In particular, a review by a state court under a plain error analysis does not waive the procedural default.  *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *see also Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir. 2000) ("Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules.").  The Supreme Court has found that Ohio's rule requiring a contemporaneous objection at trial is an adequate and independent ground on which Ohio may rely to foreclose habeas review.  *Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).  Thus, Dowell has procedurally defaulted his third ground for relief.

Dowell does not show cause and prejudice for his default.  Dowell does, however, claim actual innocence and asks that this and other procedural defaults be excused on that ground.  The Supreme Court's recent decision in *House v. Bell*, ___ U.S. ___, 126 S. Ct. 2064 (2006), clarifies the standard that courts should use in determining whether a petitioner has made a sufficient showing of actual innocence to excuse a procedural default:

> In *Schlup*[*v. Delo*, 513 U.S. 298 (1995)], the Court . . . held that prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have

13

found petitioner guilty beyond a reasonable doubt." 513 U.S., at 327. This formulation, *Schlup* explains, "ensures that petitioner's case is truly 'extraordinary,' while still providing petitioner a meaningful avenue by which to avoid a manifest injustice." *Ibid.* (quoting *McCleskey v. Zant,* 499 U.S. 467, 494 (1991)). In the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims. Yet a petition supported by a convincing *Schlup* gateway showing "raise[s] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial without the assurance that that trial was untainted by constitutional error"; hence, "a review of the merits of the constitutional claims" is justified. 513 U.S., at 317.

. . . [S]everal features of the *Schlup* standard bear emphasis. First, although "[t]o be credible" a gateway claim requires "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial," *id.,* at 324, the habeas court's analysis is not limited to such evidence. . . . *Schlup* makes plain that the habeas court must consider "'all the evidence,'" old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under "rules of admissibility that would govern at trial." See *id.,* at 327-328 (quoting Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 160 (1970)). Based on this total record, the court must make "a probabilistic determination about what reasonable, properly instructed jurors would do." 513 U.S., at 329. The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors. *Ibid.*

Second, it bears repeating that the *Schlup* standard is demanding and permits review only in the " 'extraordinary' " case. *Id.,* at 327 (quoting *Zant, supra,* at 494); see also 513 U.S., at 324 (emphasizing that "in the vast majority of cases, claims of actual innocence are rarely successful"). At the same time, though, the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence. A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt-or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

*House*, ___ U.S. at ___, 126 S. Ct. at 2076-77.

Dowell introduces no new evidence which would support his claim of actual innocence. Absent such evidence, Dowell's assertion of actual innocence is not credible. The state appellate court reviewing Dowell's conviction found that there was "substantial, competent, credible evidence upon which the jury could base its decision that defendant

purposely caused the death of Chester Bright," *Dowell*, 2004 WL 1631129 at *3, and Dowell does nothing to overcome the presumption that this conclusion is correct.  For this reason, the court should not excuse Dowell's procedural default.  Consequently, the magistrate judge recommends that the court dismiss Dowell's third ground for relief.

Dowell's sixth and eighth grounds for relief allege ineffective assistance of trial counsel.  He procedurally defaulted these claims by failing to raise them on direct appeal.  Some of the claims were included in Dowell's petition for postconviction relief, and all were dismissed as *res judicata*.[1]  The rule that *res judicata* bars a petitioner from asserting a claim which could have been raised on direct appeal in a subsequent proceeding is an adequate and independent ground which forecloses review of a federal constitutional claim. *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001); *see also Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  Thus, these claims are procedurally defaulted.  Dowell does not show cause and prejudice for his defaults, and his claim of actual innocence is not supported by sufficient evidence to lead a court to conclude that it is more likely than not that no reasonable juror would have found Dowell guilty beyond a reasonable doubt.  For these reasons, the magistrate judge recommends that the court dismiss Dowell's sixth and eighth grounds for relief.

Dowell's ninth ground for relief, ineffective assistance of appellate counsel, was procedurally defaulted because Dowell failed to raise this issue at his first available opportunity, *i.e.* as part of his direct appeal to the Ohio Supreme Court.  *See State v.*

---

[1]  Most of the claims in Dowell's eighth ground for relief were dismissed as *res judicata* by the trial court, and this judgment was affirmed by the appellate court.  Dowell's claim that his counsel was ineffective for failing to move to dismiss for violating Dowell's right to a speedy trial was first dismissed as *res judicata* by the state appellate court.

*Dowell*, Case No. 83575, 2-3 (Ohio App. Dist. 8, April 27, 2005), Answer, Exh. 11.  Dowell does not claim Ohio's rule that appellants raise their claims at the first available opportunity is not an adequate and independent state ground upon which Ohio can rely to foreclose habeas review.  Dowell also does not show cause and prejudice for this default, and he does not assert a credible claim of actual innocence.  For these reasons, the magistrate judge recommends that the court dismiss Dowell's ninth ground for relief.

Dowell failed to raise his eleventh ground for relief, prosecutorial misconduct for failing to reveal exculpatory evidence, in any state court.  Dowell is now barred by applicable time limits from raising this claim in the state appellate courts.  Ohio's rules requiring appellants to raise claims timely in the appellate court when possible before they can be considered by the state supreme court advance the state's interest in the regularity of criminal convictions and do not implicate federal law.  *See, e.g., Normand v. McAninch*, 2000 WL 377348, *5 (6th Cir. April 6, 2000).  Thus, the rules barring Dowell's claims from the state courts are adequate and independent state grounds on which Ohio can rely to foreclose habeas review.  Thus, Dowell has procedurally defaulted his eleventh ground for relief.  Dowell does not show cause and prejudice for this default, and his claim of actual innocence is not supported by adequate evidence.  For these reasons, the magistrate judge recommends that the court dismiss Dowell's eleventh ground for relief.

For the reasons given above, the magistrate judge recommends that the court dismiss Dowell's third, sixth, eighth, and eleventh grounds for relief as procedurally defaulted.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the

16

standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000); *Miller v. Francis*, 269 F.3d 609, 613-14 (6th Cir. 2001).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* ... clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 405 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially

17

indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano*, 237 F.3d 722, 729-31 (2001). If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply. *Id.* at 730.

 "[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.* The magistrate judge will consider Dowell's remaining claims under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

A.    *Whether Dowell's conviction was based on insufficient evidence*

Dowell alleges in his first and second grounds for relief that his conviction was based on insufficient evidence. A petitioner who claims that the evidence at trial was insufficient for a conviction must demonstrate that after viewing the evidence in the light most favorable to the prosecution no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000). This is the standard whether the evidence against the petitioner is direct or circumstantial. *Spalla v. Foltz,* 788 F.2d 400, 402 (6th Cir. 1986). It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *Holland v. United States,* 348 U.S. 121, 140 (1954).

18

The role of the reviewing court in considering such a claim is limited:

> A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court.  *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992).  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir. 2000).  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Ibid.*

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).  "[A]ttacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence."  *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (quoting *United States v. Adamo,* 742 F.2d 927, 935 (6th Cir.1984)).

The state court reviewing Dowell's conviction made the following findings of fact and law in affirming that conviction:

> In his first and second assignments of error, defendant challenges the adequacy of the evidence presented at trial. Specifically, defendant claims that the State failed to present sufficient evidence to support his conviction for murder and that his conviction for murder is against the manifest weight of the evidence.  We disagree and find that an evaluation of the weight of the evidence is dispositive of both issues in this case.

> The sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues.  *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541.  When reviewing the sufficiency of the evidence, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *Id.*

> While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion.  *Id.* at 390, 678 N.E.2d 541.  When a defendant asserts that his conviction is against the manifest weight of the evidence,

19

an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. *State v. Roberts* (Sept. 17, 1997), Lorain App. No. 96CA006462 at 4.

Here, defendant was charged with murder. The offense of murder is defined by R.C. 2903.02, which provides in pertinent part that "no person shall purposely cause the death of another."

Defendant's argument with respect to these assignments of error is that his conviction for murder is not supported by the weight and sufficiency of the evidence because there was no evidence that he purposely or intentionally killed Chester. We disagree.

At trial, the jury heard Deputy County Coroner Erica Armstrong testify that Chester was shot once in the chest at very close range. The jury heard Timothy Nock of the Coroner's Office testify that there was no evidence that Chester ever handled the gun. Officer Miles testified that defendant attempted to conceal the weapon from him. Detective Nathan Wilson testified that the residue on Chester's clothing matched the residue on the defendant's gun. Defendant testified that he got into an argument with Chester about money and that the gun accidently went off as they were struggling with it.

Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in convicting defendant of murder. We find there to be substantial, competent, credible evidence upon which the jury could base its decision that defendant purposely caused the death of Chester Bright. The jury was free to accept or reject any or all of the testimony of the witnesses and assess the credibility of those witnesses. Defendant's version of the events leading up the shooting were inconsistent: He did not tell Officer Miles that Chester had been shot until after Chester had been transported to the hospital, he hid the gun immediately after the shooting and he did not call for help until almost one hour after Chester had been shot. The jury was free to believe the State's witnesses over defendant's own testimony. Consequently, we conclude that defendant's assertion that the State did not produce sufficient evidence to support a conviction is also without merit. Accordingly, defendant's first and second assignments of error are overruled.

*Dowell*, 2004 WL 1631129 at *2-*3.

Dowell does not present clear and convincing evidence that the state court erred in determining that there was sufficient evidence to support his conviction for murder.  This court must presume, therefore, that this determination was correct.  For this reason the magistrate judge recommends that the court overrule Dowell's first and second grounds for relief.

B.    *Whether the state courts violated Dowell's rights protected by the Fourteenth and Fifteenth Amendment by failing to rule on the merits of his claims*

Dowell argues in his fourth ground for relief that the state courts violated rights protected by the Fourteenth and Fifteenth Amendments by failing to rule on the merits of his claims.  In particular, Dowell argues that his rights were violated when the Ohio courts dismissed his claims on the grounds of *res judicata* without holding a hearing or otherwise reviewing the merits of his claims.

The Sixth Circuit has repeatedly found that Ohio's use of *res judicata* is an adequate and independent ground on which the state may rely to foreclose constitutional review of a petitioner's habeas claims.  *See Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001) (citing *Rust v. Zent,* 17 F.3d 155 (6th Cir.1994) and *Riggins,* 935 F.2d 790; and *Byrd v. Collins*, 209 F.3d 486, 520 (6th Cir. 2000).  Dowell cites no holding of the Supreme Court to support his contention that Ohio's use of *res judicata* violates rights protected by the Fourteenth and Fifteenth Amendments, nor does this court know of any such holding.  For these reasons the magistrate judge recommends that the court overrule Dowell's fourth ground for relief.

C    *Whether Dowell's right to due process was violated*

21

Dowell's fifth ground for relief is largely incomprehensible. The following are the entirety of the allegations contained his petition regarding this ground for relief:

> Petitioner's [sic] alleges his right to due process under the Fourteenth Amendment under [sic] the United States Constitution an entitlement to invoke the factual similarity requirement where "NEW" facts were discovered and were not easily discoverable in petitioner's pro se capacity: Petitioner alleges that both his trial counsel and appellate counsel's ineffectiveness, [sic] in all related matters, Petitioner also alleges insufficiency of the evidence, improper jury instructions on voluntary manslaughter on the knowingly element. These claims may be reformulated substantially as a linguistic or organizational matter without fundamentally altering the claims as a whole.

Petition (Docket #1), p. 6b. In his Traverse, Dowell adds the following:

> Petitioner alleges that he was denied his Fi[f]th and Fourteenth Amendment [rights] when he was denied [ac]cess to his transcript until he had placed his Habeas Corpus petition with this Honorable Court that he was able to obtain the transcript so petitioner could only go off of [his] own prior knowledge of what took place during his arrest, prior to arrest, until this present date. So petitioner under [our] United States Constitution humbly moves this Honorable Court [to] allow petitioner an entitlement to invoke the factual similarity requirement where "NEW" facts had just been place[d] into the record prior to the record being in place[d] into this Honorable Court's hands. The issue of the record being alter[ed] or falsification of the trial record were discovered and these grounds were not easily discoverable [to] petitioners [sic] in his indigent state without the transcript his care to find and bring not easily discoverable in petitioner's pro se capacity. Petitioner believes this would fall under R.C. § 2913.42; State v. McNeeley, 48 Ohio App. 3d 73, 548 N.E.2d 961 (1988), or Fraud, Defrauding, Criminal Simulation, R.C. § 2913.32, or obstructing justice also [?] v. Maryland, 83 S. Ct. 1194, 373 U.S. 83, and Pyle v. State of Kansas, 317 U.S. 213.

Traverse at 46-47 (punctuation, capitalization, and spacing altered from the original; errors in the original.).

Dowell appears to be arguing that he was denied due process because authorities fraudulently altered unspecified documents in the record submitted to this court and did not grant him timely access to them. He offers no evidence to support his allegation of fraud, does not make any argument to support his allegation, and does not cite any holding of the

Supreme Court that would support an alleged due process violation.  Thus, Dowell utterly

fails to carry his burden of proof with regard to this ground for relief.  For these reasons the

magistrate judge recommends that the court overrule Dowell's fifth ground for relief.

D.     *Whether Dowell was entitled to an evidentiary hearing on his claims of ineffective
       assistance of trial counsel*

       Dowell's seventh ground for relief reads as follows:

       G.  Ground 7:       PETITIONER   ASSERTS   AN ENTITLEMENT TO AN
                           EVIDENTIARY HEARING ON HIS CLAIMS OF INEFFECTIVE
                           ASSISTANCE OF COUNSEL WHERE COUNSEL NOT ONLY
                           PREJUDICE[D] HIS RIGHTS AND TRIAL BUT ALSO DENIED
                           HIS   CLIENT'S   FIFTH,   SIXTH   AND   FOURTEENTH
                           AMENDMENT PRIOR [sic] TO TRIAL, DURING TRIAL, AND
                           EVEN AFTER HIS TRIAL.

       Supporting FACTS: Petitioner alleges that the factual basis of his claims of
       ineffective assistance of counsel was fully presented to the State court, and that the
       facts related thereto entitle him to an evidentiary hearing because those facts entitle
       petitioner to relief by Constitutional standards of laws [sic].

Petition at 6g (punctuation altered from the original).  In his Traverse, Dowell makes clear

that ground seven involves a series of claims regarding the alleged ineffectiveness of

appellate counsel.

       As already noted, respondent has raised Dowell's procedural default of claims

regarding the alleged ineffective assistance of appellate counsel as a defense to his

asserting them in a habeas petition.  Dowell has defaulted these claims, does not show

cause and prejudice for the default, and fails adequately to support a claim of actual

innocence which might excuse the default.  For this reason the magistrate judge

recommends that the court dismiss Dowell's seventh ground for relief as procedurally

defaulted.

E.     *Whether Dowell was denied rights protected by the Fifth, Sixth, and Fourteenth*

23

*Amendments*

Dowell alleges in his twelfth ground for relief that he was denied rights protected by the Fifth, Sixth, and Fourteenth Amendments.  The entirety of Dowell's claim and argument is as follows:

> K.  Ground 12:  PETITIONER WAS DENIED HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED AND HE IS IN CUSTODY IN VIOLATION OF THESE CONSTITUTIONAL LAWS OF THE UNITED STATES.
>
> <u>Supporting FACTS:</u> Petitioner alleges this his conviction rest upon and are sustained by decisions that was based on unreasonable determinations of factual issues made by the State courts and that the facts determined are not fairly supported by the record and evidence.

Petition at 6r (errors in the original) (punctuation altered from the original).

Respondent rightly points out that Dowell fails to set forth specific, identifiable constitutional violations.  Dowell also fails provide any arguments in support of his allegations or to cite any Supreme Court holding that would support those allegations.  Because Dowell fails properly to allege, argue, or prove a constitutional violation, the magistrate judge recommends that the court overrule his twelfth ground for relief.

IV

For the above reasons, the magistrate judge recommends that Dowell's petition for a writ of habeas corpus be dismissed.

Date:  January 30, 2007          /s/ Patricia A. Hemann

Patricia A. Hemann
United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).